UNITED STATES of America, Plaintiff–Appellee,

v.

John David BOYD, Defendant–Appellant.

No. 88-2632
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1989.

Jeffrey C. Duffey, Montgomery, Ala., for defendant-appellant.

Frances H. Stacy, Paula Offenhauser, Thomas I. Meehan, Jr., Asst. U.S. Attys., and Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and WILLIAMS and DUHE, Circuit Judges.

## I.

PER CURIAM:

John David Boyd appeals his conviction on one count of conspiracy to manufacture methamphetamine, one count of aiding and abetting the manufacture of methamphetamine, and one count of carrying a firearm during drug trafficking operations. We affirm.

## II.

On December 3, 1987, Agent Dimambro of the Drug Enforcement Agency (DEA) and Paul Mills, a DEA informer, met with Patricia Davis and James Boyett to discuss the manufacture of twenty pounds of methamphetamine. Davis, a chemist, agreed to manufacture the drugs with the help of Boyett and Boyd. On December 8, 1987, Dimambro met Davis, Boyett and Boyd at a hotel room. The group proceeded to a warehouse where the manufacturing process was to occur. While the others began assembling the necessary drug manufacturing equipment, Boyd unloaded chemicals and a shotgun from a car into the warehouse. Davis, Boyd, and Boyett mixed the chemicals and began the cooking process which, in approximately 48 hours, would yield methamphetamine. Davis, Boyd, and Boyett then left the operation in the control of Agent Dimambro. Boyd took the shotgun with him when he departed.

At midnight Boyd and Boyett returned to relieve Dimambro. Dimambro left the

warehouse and returned at 2:15 a.m. on that morning. Dimambro found Boyd and Boyett in the office of the warehouse. The shotgun, broken open for loading with a shell inserted in the chamber, lay within arm's reach of Boyd. Near the shotgun were cleaning patches, a screwdriver, and some cleaning fluid. Upon determining that the chemicals had formed phenylacetone, a precursor chemical to methamphetamine, Dimambro arrested Boyd and Boyett. Both were found guilty of conspiracy to manufacture methamphetamine, aiding and abetting in the manufacture of the drug, and unlawfully carrying a firearm during drug trafficking operations. Davis pled guilty to the first two of these three counts. Boyd was sentenced under the United States Sentencing Commission's sentencing guidelines to two concurrent twenty-year sentences on counts one and two, and to a five-year sentence on count three, to run concurrently with the twenty-year sentences.

### III.

### A.

■ Boyd contends that the application of the sentencing guidelines to this conspiracy is a violation of the Ex Post Facto Clause of the federal Constitution, Art. I § 9 cl. 3. His argument states that because he joined the conspiracy to manufacture methamphetamines in early 1987, before the guidelines went into effect on November 1, 1987, he should be sentenced under the former sentencing statute, 21 U.S.C. 841(b)(1)(C). This statute allowed a sentence of up to twenty years for the offense. Boyd argues that applying the sentencing guidelines to a pre-guidelines offense is an ex post facto application of the law.

Boyd's argument is foreclosed by *U.S. v. White*, 869 F.2d 822 (5th Cir.), cert. denied, — U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). In that case the court applied the sentencing guidelines to a drug conspiracy conviction where the conspiracy had begun prior to November 1, 1987, but continued beyond that date. The court stated:

> Conspiracy is a continuing offense. Assuming that the guidelines proscribe a

sentence for her drug conspiracy offense greater than the previous norm, the Ex Post Facto Clause, which bars an increase in the punishment for an offense after it has been committed, is not violated by applying an increased penalty to White's conspiracy that continued after the effective date of the increased penalty.

869 F.2d at 826 (emphasis in original). The conspiracy of which Boyd became a participant continued until the arrest of the parties involved on December 9, 1987. The district court did not violate the Ex Post Facto Clause by applying the sentencing guidelines to this conspiracy.

### B.

■ Boyd next argues that the district court abused its discretion by sentencing him to two concurrent twenty-year jail terms on counts one and two while sentencing his co-defendant Boyett, who was found guilty of the same two counts, to two concurrent two-year terms. We find no abuse of discretion in the sentencing.

Although the two defendants were found guilty under the same indictment counts, Boyd's long criminal record placed him in criminal history category V, while Boyett's shorter criminal record placed him in criminal history category I. Accordingly, the sentencing range for Boyd was 235–293 months and for Boyett was 151–188 months. The district court gave Boyd a sentence at the lower end of the applicable scale (240 months).

Apparently the district court found reasons to depart from the sentencing guidelines in reducing Boyett's sentence to twenty-four months. The record of Boyett's sentencing proceeding is not before this court. The district court's reasoning, therefore, is not apparent. We have stated:

> [A] mere disparity of sentences among codefendants does not, alone, constitute abuse of discretion, *United States v. Atkins*, 618 F.2d 366, 373–74 (5th Cir.1980), and a sentencing court is not required to enunciate the reasons underlying its deci-

sion. *United States v. Garcia*, 617 F.2d 1176, 1178 (5th Cir.1980). A judge is to be accorded wide discretion in determining an appropriate sentence. *Id.* He is not obligated to consider codefendants' sentences when imposing sentence on a defendant. *United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir.1985). A defendant cannot rely upon his codefendants' sentences as a yard-stick for his own. *United States v. Hayes*, 589 F.2d 811, 827 (5th Cir.), *cert. denied*, 444 U.S. 847 [100 S.Ct. 93, 62 L.Ed.2d 60] (1979). *United States v. Castillo–Roman*, 774 F.2d 1280, 1283–84 (5th Cir.1985). Boyd does not argue that his own sentence exceeded that mandated by the sentencing guidelines. Neither does he argue that the court based his sentence on incorrect or inadmissible information. He cannot base a challenge to his sentence solely on the lesser sentence given by the district court to his codefendant.

### C.

Boyd argues that the prosecutor adduced insufficient evidence to convict him of "unlawfully" carrying a firearm in connection with the drug operation. The wording of the indictment, Boyd states, charges him with the illegal possession of a firearm as a separate crime, not with legally carrying a firearm for an illegal purpose, i.e., in connection with drug trafficking activities. Boyd's conviction on count three, he argues, should be overturned since the prosecutor brought forward no evidence that Boyd's possession of the firearm was illegal despite the drug operation.

Count three of the indictment stated:

On or about December 9, 1987, ... Patricia Davis, James Neil Boyett and John David Boyd, defendants herein, aided, abetted and assisted by each other, did knowingly and unlawfully carry a firearm, a shotgun, during the commission of a drug trafficking offense, the attempted unlawful manufacture of the Schedule II controlled substance methamphetamine, a violation of Title 21, United States Code, Section 841(a)(1).

(Violation: Title 18, United States Code, Sections 2 and 924(c)(1) and Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846).

Boyd concedes that current 18 U.S.C. § 924(c)(1) does not require the possession of the firearm to be illegal independent of its involvement in a drug operation. Section 924(c)(1) states in pertinent part:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

■ We have previously stated that although an indictment must inform the defendant of every element of the crime of which he is accused, an indictment need not track statutory language. *U.S. v. Varkonyi*, 645 F.2d 453, 455–56 (5th Cir. Unit A 1981). "[T]he law does not compel a ritual of words ... [t]he validity of an indictment is governed by practical, not technical considerations. Accordingly, the appropriate test in this instance is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards." *Id.* (citations omitted). The clarity of an indictment can properly be increased by its reference to the statute which allegedly has been violated. *See Varkonyi*, 645 F.2d at 456; *U.S. v. Chilcote*, 724 F.2d 1498, 1505 (11th Cir.), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984).

■ Count three of the indictment against Boyd informed him of each element of the firearms violation. Additionally, the count referred Boyd to 18 U.S.C. § 924(c)(1) as the statutory source of the charge against him. The indictment did not fail to provide Boyd with the information necessary for him to prepare his defense to a charge of violating 18 U.S.C. § 924(c)(1). It follows that the government was not required to adduce evidence of the independent unlawfulness of Boyd's carrying the shotgun. We affirm Boyd's conviction under count three.

### D.

Finally, Boyd argues that the prosecution failed to present evidence sufficient to show that the shotgun carried by Boyd "was used or related to the crime of attempting to manufacture methamphetamine in any way whatsoever." Appellant's Brief at 35. The evidence did show that the gun was in the warehouse office near the drug-making activity, that it was loaded, and that other shotgun shells and cleaning patches were near the gun. Although the gun was broken open and could not be fired until it was closed, testimony indicated that immediately prior to the arrest the shotgun was located within arm's reach of Boyd and that the loaded shotgun could have been made ready to fire within one second.

■ It is not necessary for conviction under 18 U.S.C. § 924(c)(1) that the weapon involved was actually used to harm, intimidate, or threaten others. It is enough that the firearm was present at the drug-trafficking scene, that the weapon could have been used to protect or facilitate the operation, and that the presence of the weapon was in some way connected with the drug trafficking. *U.S. v. Robinson*, 857 F.2d 1006, 1010 (5th Cir.1988). "The government need not prove an actual use or brandishing of the weapon." *U.S. v. Coburn*, 876 F.2d 372, 375 (5th Cir.1989). In both *Robinson* and *Coburn* the weapons involved were not as accessible as the shotgun here. In *Robinson* the guns were hidden in and under furniture, and in *Coburn* the gun was unloaded. The jury in Boyd's case was presented with sufficient evidence to reasonably conclude that Boyd carried the weapon during the attempted manufacture of methamphetamine and that the weapon was involved in the overall drug-trafficking activity.

### IV.

The judgment of the district court is AFFIRMED.