United States Court of Appeals
For the First Circuit

No. 93-1904

UNITED STATES,

Appellee,

v.

DOMINGO REYES-MERCADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Jose A. Fuentes Agostini with whom Dominguez & Totti was on brief

for appellant.
Jorge E. Vega-Pacheco, Assistant United States Attorney, with

whom Guillermo Gill, United States Attorney, was on brief for

appellee.

April 28, 1994

STAHL, Circuit Judge. After being convicted and
STAHL, Circuit Judge.

sentenced on various drug and firearms charges, defendant-

appellant Domingo Reyes-Mercado argues that the district

court erred in 1) denying his motion to suppress evidence; 2)

determining that the evidence presented at trial was

sufficient to convict him; and 3) ruling that it had no power

to credit him for time served under home confinement.

Finding no error, we affirm.

I.

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

For purposes of defendant's challenge to the

sufficiency of the evidence, we review the facts in a light

most favorable to the government. United States v. Torres-

Maldonado, 14 F.3d 95, 98 (1st Cir. 1994).

Sometime in mid-June of 1992 in Cartagena,

Colombia, a confidential government informant (hereinafter

"CI") working on a ship was provided with four kilograms of

cocaine and instructed to contact defendant upon the ship's

arrival in Ponce, Puerto Rico. On arrival in Ponce on June

17, 1992, the CI telephoned defendant. With codefendant

Rolando Lopez-Maysonet acting as interpreter, defendant

agreed to buy four kilograms of cocaine from the CI. The

purchase was arranged to take place that same day, June 17,

1992, at a shopping center phone booth. Upon defendant's

arrival in a black Nissan Pathfinder, the CI entered the

-2-
2

vehicle and sold four kilograms of cocaine to defendant and

Lopez-Maysonet. On a signal from the CI, United States

Customs Service agents surrounded the vehicle, placed

defendant and Lopez-Maysonet under arrest, and conducted a

search of the Pathfinder's interior.

In the search, the agents found two handbags

containing money, two cellular telephones, and one carry-on

bag containing four kilograms of cocaine. Pursuant to

established procedures, United States Customs Agent Jose Ruiz

and Marine Enforcement Officer Radames Sanchez then impounded

the car and conducted an inventory search. During the

inventory search of the vehicle, the agents found in the

glove box a loaded Ruger pistol with an obliterated serial

number.

On June 29, 1992, just days after his arrest, the

district court ordered, inter alia, that pending trial,

defendant remain confined at home wearing an electronic

surveillance bracelet. Shortly thereafter, defendant was

charged in a five-count indictment. Three of the counts

related solely to drug violations. Defendant pled guilty to

these three counts.1 The remaining two counts charged

1. The three drug counts stated that defendant and Lopez-
Maysonet 1) conspired to import in excess of 4500 grams of
cocaine in violation of 21 U.S.C. 952(a), 960, and 963; 2)
aided and abetted each other in possessing with an intent to
distribute in excess of 4500 grams of cocaine in violation of
18 U.S.C. 2, and 21 U.S.C. 841(a)(1); and 3) aided and
abetted each other in the use of a communication facility,

-3-
3

defendant with 1) carrying a firearm in relation to the

commission of a drug offense in violation of 18 U.S.C.

924(c)(1)2; and 2) possession of a firearm having been

transported in interstate commerce and whose manufacturer's

serial number had been obliterated in violation of 18 U.S.C.

922(k)3.

Defendant pled not guilty to both firearms charges.

Prior to trial, a suppression hearing took place before a

magistrate judge at which defendant argued that the gun found

in the inventory search should be suppressed. More

i.e., a telephone, for causing or facilitating the possession
with intent to distribute cocaine, in violation of 18 U.S.C.
2 and 21 U.S.C. 843(b).

2. Section 924(c)(1) provides in relevant part:

Whoever, during and in relation to any
crime of violence or drug trafficking
crime (including a crime of violence or
drug trafficking crime which provides for
an enhanced punishment if committed by
the use of a deadly or dangerous weapon
or device) for which he may be prosecuted
in a court of the United States, uses or
carries a firearm, shall, in addition to
the punishment provided for such crime or
violence or drug trafficking crime, be
sentenced to imprisonment for five years.

3. Section 922(k) provides in relevant part:

It shall be unlawful for any person . . .
to possess or receive any firearm which
has had the importer's or manufacturer's
serial number removed, obliterated, or
altered and has, at any time, been
shipped or transported in interstate or
foreign commerce.

-4-
4

specifically, defendant argued that the government's evidence

conflicted as to whether the gun was first discovered in the

inventory search, or whether it had been discovered at the

scene of the arrest. Seizing on this inconsistency,

defendant argued that the gun had, in fact, been discovered

at the time of the arrest, and, further, that this discovery

of the gun was unlawful. The magistrate considered the

government's conflicting evidence, determined that the gun

had been lawfully discovered in the inventory search, and

denied the motion to suppress. At trial, a jury convicted

defendant on both firearms counts, and this appeal followed.

II.

DISCUSSION

Defendant argues that 1) the lower court erred in

denying defendant's motion to suppress the gun; 2) the

evidence presented at trial was insufficient to convict

defendant on the weapons charges; and 3) the lower court

erred in determining that it had no power to grant the

appellant credit for the time he had served in home

confinement. We address these arguments in turn.

A. Suppression of the Gun

In arguing that the gun should have been

suppressed, defendant begins by challenging the facts as

found by the magistrate judge at the suppression hearing. In

essence, defendant argues that the gun was not discovered in

-5-
5

the inventory search, but rather that it was discovered at

the scene of the arrest in an unlawful search of the glove

compartment.

Where the lower court judge sits as the factfinder,

we uphold findings of fact unless they are clearly erroneous.

United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993).

Moreover, where there are two permissible views of the

evidence, the interpretation assigned by the lower court must

be adopted. Williams v. Poulos, 11 F.3d 271, 278 (1st Cir.

1993).

In the instant case, Sanchez, the Marine

Enforcement Officer present at the arrest, testified at a

preliminary detention hearing that the gun was first

discovered at the scene of the arrest. Customs Agent Ruiz,

on the other hand, who was also present at the arrest,

testified at the suppression hearing that the weapon was

seized from the Pathfinder during the inventory search. The

magistrate judge, apparently crediting Ruiz's testimony,

expressly found that the gun was first found during the

inventory search. Defendant cites nothing in the record to

indicate that this credibility determination was clearly

erroneous. Accordingly, we find no error in the lower

court's determination that the gun was discovered during the

inventory search. Moreover, defendant concedes the validity

of the inventory search. Cf. United States v. Zapata, No.

-6-
6

93-1349, slip. op. at 16 (1st Cir. March 24, 1994) ("Courts

have regularly approved inventory searches of impounded motor

vehicles despite the absence of probable cause."). Thus, we

find no error in the district court's denial of defendant's

motion to suppress the gun.4

B. Sufficiency of the Evidence

When reviewing a sufficiency of the evidence

challenge, we examine the evidence in the light most

favorable to the government and affirm convictions where a

rational juror could have found guilt beyond a reasonable

doubt. United States v. Jadusingh, 12 F.3d 1162, 1168 (1st

Cir. 1994).

Under section 924(c)(1), the government must show

that the defendant used one or more firearms during and in

relation to a drug trafficking offense. United States v.

Hatfield, 918 F.2d 987, 996 (1st Cir. 1990), cert. denied,

111 S. Ct. 2062 (1991). Use, as described in section

4. We note additionally that even if the gun was first
discovered at the scene of the arrest, the evidence in the
record before us shows that a search of the glove compartment
incident to defendant's arrest would have been lawful. See

New York v. Belton, 453 U.S. 454, 460-61 & n.4 (holding that

after policeman has made a lawful custodial arrest of the
occupant of an automobile, he may, as a contemporaneous
incident of that arrest, "examine the contents of any
containers," including glove compartments, found within the
passenger compartment). Moreover, given that defendant
concedes the validity of the inventory search, it appears
that the suppression would be inappropriate, inasmuch as the
gun would inevitably have been lawfully discovered. See,

e.g., Zapata, slip op. at 15-17 (discussing generally the

doctrine of inevitable discovery).

-7-
7

924(c)(1), calls for something more than "possession." See

United States v. McFadden, 13 F.3d 463, 465 (1st Cir. 1994).

While a weapon need not be brandished, displayed or

discharged in order to sustain a conviction under section

924(c)(1), there must be some facilitative nexus between the

weapon and the criminal activity. See Torres-Maldonado, 14

F.3d at 102; United States v. Castro-Lara, 970 F.2d 976, 983

(1st Cir. 1992), cert. denied, 113 S. Ct. 2935 (1993); United

States v. Plummer, 964 F.2d 1251, 1253-55 (1st Cir.), cert.

denied 113 S. Ct. 350 (1992). "[A] conviction will be

sustained under [section 924(c)] if the possessor of a weapon

intended to have it available for possible use during or

immediately following the transaction, or if it facilitated

the transaction by lending courage to the possessor." Id. at

1254 (quoting United States v. Payero, 888 F.2d 928, 929 (1st

Cir. 1989)). "[U]ltimately, whether or not the gun[] helped

[a defendant] commit the drug crime is a matter for a jury,

applying common-sense theories of human nature and

causation." McFadden, 13 F.3d at 466 (quoting United States

v. Wilkinson, 926 F.2d 22, 26 (1st Cir.), cert. denied, 111

S. Ct. 2813 (1991)).

When viewed in the light most favorable to the

government, the evidence shows that a reasonable jury could

find beyond a reasonable doubt that defendant used the gun in

connection with a drug crime as required by section 924(c).

-8-
8

First, the Pathfinder belonged to and was registered to

defendant. Second, throughout the consummation of the drug

deal, which took place inside the Pathfinder, the loaded gun

was located in the glove compartment directly in front of the

passenger seat where defendant was seated. Finally, the jury

heard ample testimony from Agent Ruiz regarding the details

of defendant's involvement in the cocaine transaction. This

testimony described the plan devised in Colombia to deliver

the cocaine to defendant in Ponce, Puerto Rico. Based on

this evidence, the jury could conclude that the gun was

present by design, rather than happenstance, and that it was

used by defendant in connection with the drug purchase as

required by section 924(c).5

C. The Sentencing Court's Ability to Consider Home

Confinement Toward a Reduction in Sentence

Finally, defendant contends that the sentencing

court erred by concluding that it had no power to grant him

credit for the time he served under home confinement.6 We

disagree.

Under 18 U.S.C. 3585, "[a] defendant will receive

credit towards the sentence of imprisonment for any time he

5. The very evidence supporting defendant's conviction under
section 924(c) also supports his conviction under section
922(k).

6. The record reflects that defendant eventually broke the
conditions of his home confinement and that he was
subsequently incarcerated pending trial.

-9-
9

has spent in official custody prior to the date the sentence

commences." In a similar case, United States v. Zackular,

945 F.2d 423, 425 (1st Cir. 1991), we stated, "We do not

believe that the official detention requirement of section

3585 can be fulfilled by home confinement." Id. Rather,

"the fact that home confinement is included as a condition of

probation, but not as a substitute for incarceration,

persuasively indicates that Congress considered home

confinement not to be the equivalent of immurement, ergo, not

to come within the ambit of `official detention.'" Id.7

Therefore, under the clear precedent of this

circuit, the district court properly concluded that it did

not have the power to credit defendant for time served under

home confinement.

III.

CONCLUSION

For the foregoing reasons, defendant's conviction

and sentence are

7. Since we decided Zackular, the Supreme Court has held in

United States v. Wilson, 112 S. Ct. 1351 (1992), that, in the

first instance, credit under section 3585 must be calculated
by the Attorney General. Id. at 1354. As far as the record

before us reflects, no such calculation was requested or made
here. Despite defendant's failure to exhaust administrative
remedies, we reaffirm that part of Zackular which holds that

pretrial home confinement may not be credited toward
"official detention." Cf. Fraley v. United States Bureau of

Prisons, 1 F.3d 924, 925-26 (9th Cir. 1993) (holding that

home confinement may not be credited toward official
detention).

-10-
10

Affirmed.

-11-
11