USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 93-1904 UNITED STATES, Appellee, v. DOMINGO REYES-MERCADO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Jose A. Fuentes Agostini with whom Dominguez & Totti was on brief ________________________ _________________ for appellant. Jorge E. Vega-Pacheco, Assistant United States Attorney, with _______________________ whom Guillermo Gill, United States Attorney, was on brief for _______________ appellee. ____________________ April 28, 1994 ____________________ STAHL, Circuit Judge. After being convicted and STAHL, Circuit Judge. _____________ sentenced on various drug and firearms charges, defendant- appellant Domingo Reyes-Mercado argues that the district court erred in 1) denying his motion to suppress evidence; 2) determining that the evidence presented at trial was sufficient to convict him; and 3) ruling that it had no power to credit him for time served under home confinement. Finding no error, we affirm. I. I. __ FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ________________________________________ For purposes of defendant's challenge to the sufficiency of the evidence, we review the facts in a light most favorable to the government. United States v. Torres- ______________ _______ Maldonado, 14 F.3d 95, 98 (1st Cir. 1994). _________ Sometime in mid-June of 1992 in Cartagena, Colombia, a confidential government informant (hereinafter "CI") working on a ship was provided with four kilograms of cocaine and instructed to contact defendant upon the ship's arrival in Ponce, Puerto Rico. On arrival in Ponce on June 17, 1992, the CI telephoned defendant. With codefendant Rolando Lopez-Maysonet acting as interpreter, defendant agreed to buy four kilograms of cocaine from the CI. The purchase was arranged to take place that same day, June 17, 1992, at a shopping center phone booth. Upon defendant's arrival in a black Nissan Pathfinder, the CI entered the -2- 2 vehicle and sold four kilograms of cocaine to defendant and Lopez-Maysonet. On a signal from the CI, United States Customs Service agents surrounded the vehicle, placed defendant and Lopez-Maysonet under arrest, and conducted a search of the Pathfinder's interior. In the search, the agents found two handbags containing money, two cellular telephones, and one carry-on bag containing four kilograms of cocaine. Pursuant to established procedures, United States Customs Agent Jose Ruiz and Marine Enforcement Officer Radames Sanchez then impounded the car and conducted an inventory search. During the inventory search of the vehicle, the agents found in the glove box a loaded Ruger pistol with an obliterated serial number. On June 29, 1992, just days after his arrest, the district court ordered, inter alia, that pending trial, _____ ____ defendant remain confined at home wearing an electronic surveillance bracelet. Shortly thereafter, defendant was charged in a five-count indictment. Three of the counts related solely to drug violations. Defendant pled guilty to these three counts.1 The remaining two counts charged ____________________ 1. The three drug counts stated that defendant and Lopez- Maysonet 1) conspired to import in excess of 4500 grams of cocaine in violation of 21 U.S.C. 952(a), 960, and 963; 2) aided and abetted each other in possessing with an intent to distribute in excess of 4500 grams of cocaine in violation of 18 U.S.C. 2, and 21 U.S.C. 841(a)(1); and 3) aided and abetted each other in the use of a communication facility, -3- 3 defendant with 1) carrying a firearm in relation to the commission of a drug offense in violation of 18 U.S.C. 924(c)(1)2; and 2) possession of a firearm having been transported in interstate commerce and whose manufacturer's serial number had been obliterated in violation of 18 U.S.C. 922(k)3. Defendant pled not guilty to both firearms charges. Prior to trial, a suppression hearing took place before a magistrate judge at which defendant argued that the gun found in the inventory search should be suppressed. More ____________________ i.e., a telephone, for causing or facilitating the possession with intent to distribute cocaine, in violation of 18 U.S.C. 2 and 21 U.S.C. 843(b). 2. Section 924(c)(1) provides in relevant part: Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime or violence or drug trafficking crime, be sentenced to imprisonment for five years. 3. Section 922(k) provides in relevant part: It shall be unlawful for any person . . . to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce. -4- 4 specifically, defendant argued that the government's evidence conflicted as to whether the gun was first discovered in the inventory search, or whether it had been discovered at the scene of the arrest. Seizing on this inconsistency, defendant argued that the gun had, in fact, been discovered at the time of the arrest, and, further, that this discovery of the gun was unlawful. The magistrate considered the government's conflicting evidence, determined that the gun had been lawfully discovered in the inventory search, and denied the motion to suppress. At trial, a jury convicted defendant on both firearms counts, and this appeal followed. II. II. ___ DISCUSSION DISCUSSION __________ Defendant argues that 1) the lower court erred in denying defendant's motion to suppress the gun; 2) the evidence presented at trial was insufficient to convict defendant on the weapons charges; and 3) the lower court erred in determining that it had no power to grant the appellant credit for the time he had served in home confinement. We address these arguments in turn. A. Suppression of the Gun __________________________ In arguing that the gun should have been suppressed, defendant begins by challenging the facts as found by the magistrate judge at the suppression hearing. In essence, defendant argues that the gun was not discovered in -5- 5 the inventory search, but rather that it was discovered at the scene of the arrest in an unlawful search of the glove compartment. Where the lower court judge sits as the factfinder, we uphold findings of fact unless they are clearly erroneous. United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993). ______________ _______ Moreover, where there are two permissible views of the evidence, the interpretation assigned by the lower court must be adopted. Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. ________ ______ 1993). In the instant case, Sanchez, the Marine Enforcement Officer present at the arrest, testified at a preliminary detention hearing that the gun was first discovered at the scene of the arrest. Customs Agent Ruiz, on the other hand, who was also present at the arrest, testified at the suppression hearing that the weapon was seized from the Pathfinder during the inventory search. The magistrate judge, apparently crediting Ruiz's testimony, expressly found that the gun was first found during the inventory search. Defendant cites nothing in the record to indicate that this credibility determination was clearly erroneous. Accordingly, we find no error in the lower court's determination that the gun was discovered during the inventory search. Moreover, defendant concedes the validity of the inventory search. Cf. United States v. Zapata, No. ___ _____________ ______ -6- 6 93-1349, slip. op. at 16 (1st Cir. March 24, 1994) ("Courts have regularly approved inventory searches of impounded motor vehicles despite the absence of probable cause."). Thus, we find no error in the district court's denial of defendant's motion to suppress the gun.4 B. Sufficiency of the Evidence _______________________________ When reviewing a sufficiency of the evidence challenge, we examine the evidence in the light most favorable to the government and affirm convictions where a rational juror could have found guilt beyond a reasonable doubt. United States v. Jadusingh, 12 F.3d 1162, 1168 (1st _____________ _________ Cir. 1994). Under section 924(c)(1), the government must show that the defendant used one or more firearms during and in relation to a drug trafficking offense. United States v. _____________ Hatfield, 918 F.2d 987, 996 (1st Cir. 1990), cert. denied, ________ _____ ______ 111 S. Ct. 2062 (1991). Use, as described in section ____________________ 4. We note additionally that even if the gun was first discovered at the scene of the arrest, the evidence in the record before us shows that a search of the glove compartment incident to defendant's arrest would have been lawful. See ___ New York v. Belton, 453 U.S. 454, 460-61 & n.4 (holding that ________ ______ after policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, "examine the contents of any containers," including glove compartments, found within the passenger compartment). Moreover, given that defendant concedes the validity of the inventory search, it appears that the suppression would be inappropriate, inasmuch as the gun would inevitably have been lawfully discovered. See, ___ e.g., Zapata, slip op. at 15-17 (discussing generally the ____ ______ doctrine of inevitable discovery). -7- 7 924(c)(1), calls for something more than "possession." See ___ United States v. McFadden, 13 F.3d 463, 465 (1st Cir. 1994). ______________ ________ While a weapon need not be brandished, displayed or discharged in order to sustain a conviction under section 924(c)(1), there must be some facilitative nexus between the weapon and the criminal activity. See Torres-Maldonado, 14 ___ ________________ F.3d at 102; United States v. Castro-Lara, 970 F.2d 976, 983 _____________ ___________ (1st Cir. 1992), cert. denied, 113 S. Ct. 2935 (1993); United _____ ______ ______ States v. Plummer, 964 F.2d 1251, 1253-55 (1st Cir.), cert. ______ _______ _____ denied 113 S. Ct. 350 (1992). "[A] conviction will be ______ sustained under [section 924(c)] if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor." Id. at ___ 1254 (quoting United States v. Payero, 888 F.2d 928, 929 (1st _____________ ______ Cir. 1989)). "[U]ltimately, whether or not the gun[] helped [a defendant] commit the drug crime is a matter for a jury, applying common-sense theories of human nature and causation." McFadden, 13 F.3d at 466 (quoting United States ________ _____________ v. Wilkinson, 926 F.2d 22, 26 (1st Cir.), cert. denied, 111 ____________ _____ ______ S. Ct. 2813 (1991)). When viewed in the light most favorable to the government, the evidence shows that a reasonable jury could find beyond a reasonable doubt that defendant used the gun in connection with a drug crime as required by section 924(c). -8- 8 First, the Pathfinder belonged to and was registered to defendant. Second, throughout the consummation of the drug deal, which took place inside the Pathfinder, the loaded gun was located in the glove compartment directly in front of the passenger seat where defendant was seated. Finally, the jury heard ample testimony from Agent Ruiz regarding the details of defendant's involvement in the cocaine transaction. This testimony described the plan devised in Colombia to deliver the cocaine to defendant in Ponce, Puerto Rico. Based on this evidence, the jury could conclude that the gun was present by design, rather than happenstance, and that it was used by defendant in connection with the drug purchase as required by section 924(c).5 C. The Sentencing Court's Ability to Consider Home _____________________________________________________________ Confinement Toward a Reduction in Sentence __________________________________________ Finally, defendant contends that the sentencing court erred by concluding that it had no power to grant him credit for the time he served under home confinement.6 We disagree. Under 18 U.S.C. 3585, "[a] defendant will receive credit towards the sentence of imprisonment for any time he ____________________ 5. The very evidence supporting defendant's conviction under section 924(c) also supports his conviction under section 922(k). 6. The record reflects that defendant eventually broke the conditions of his home confinement and that he was subsequently incarcerated pending trial. -9- 9 has spent in official custody prior to the date the sentence commences." In a similar case, United States v. Zackular, ______________ ________ 945 F.2d 423, 425 (1st Cir. 1991), we stated, "We do not believe that the official detention requirement of section 3585 can be fulfilled by home confinement." Id. Rather, __ "the fact that home confinement is included as a condition of probation, but not as a substitute for incarceration, persuasively indicates that Congress considered home confinement not to be the equivalent of immurement, ergo, not to come within the ambit of `official detention.'" Id.7 __ Therefore, under the clear precedent of this circuit, the district court properly concluded that it did not have the power to credit defendant for time served under home confinement. III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, defendant's conviction and sentence are ____________________ 7. Since we decided Zackular, the Supreme Court has held in ________ United States v. Wilson, 112 S. Ct. 1351 (1992), that, in the _____________ ______ first instance, credit under section 3585 must be calculated by the Attorney General. Id. at 1354. As far as the record ___ before us reflects, no such calculation was requested or made here. Despite defendant's failure to exhaust administrative remedies, we reaffirm that part of Zackular which holds that ________ pretrial home confinement may not be credited toward "official detention." Cf. Fraley v. United States Bureau of ___ ______ _______________________ Prisons, 1 F.3d 924, 925-26 (9th Cir. 1993) (holding that _______ home confinement may not be credited toward official detention). -10- 10 Affirmed. ________ -11- 11