USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1832 UNITED STATES OF AMERICA, Appellee, v. ROBERTO VALLE, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ William J. Murphy for appellant. _________________ Margaret E. Curran, Assistant United States Attorney, with __________________ whom Sheldon Whitehouse, United States Attorney, and Kenneth P. ___________________ __________ Madden, Assistant United States Attorney, were on brief, for ______ appellee. _________________________ December 26, 1995 _________________________ SELYA, Circuit Judge. Defendant-appellant Roberto SELYA, Circuit Judge. ______________ Valle challenges his convictions for possession of cocaine with intent to distribute, see 21 U.S.C. 841(a)(1) & (b)(1)(B), and ___ use of a firearm during and in relation to a drug trafficking crime, see 18 U.S.C. 924(c). We affirm the drug trafficking ___ conviction but reverse the firearms conviction. I. BACKGROUND I. BACKGROUND On April 17, 1991, nine law enforcement officers converged upon an apartment located at 82 Glenham St., Providence, Rhode Island, to execute a search warrant. Inside, they found three individuals: the appellant, his grandmother (who leased the apartment), and Rafael Tavarez. The police immediately segregated the trio in different chambers. They placed the appellant in the kitchen under the watchful eye of Detective Michael Panzarella. The search team then started its treasure hunt. In short order, a narcotics detective, Guy DeAngelis, discovered a plastic bag secreted between the cushions of the living room couch. Inside the bag were forty-seven cut straws with the ends burned shut. Subsequent tests confirmed that each straw contained cocaine base, known colloquially as "crack." Another gendarme, Robert Clements, spied two firearms under a day bed in the dining room. A third officer, John Corley, rummaged through the rear hall closet and found a plastic bag, containing an additional 101 crack-filled straws, in the pocket of a green jacket. 2 Promptly upon the discovery of the contraband, Panzarella read the appellant his rights. See Miranda v. ___ _______ Arizona, 384 U.S. 436, 479 (1966). Meanwhile, the search _______ continued. DeAngelis proceeded to examine the contents of the rear hall closet, poring over items of apparel one by one and dropping each piece on the floor when he had finished his inspection of it. The appellant (who enjoyed a clear view of the closet from the kitchen) harangued DeAngelis not to throw his clothing on the floor as he might want to wear it upon his release. When DeAngelis asked the appellant whether he owned the clothes, the appellant responded affirmatively. In reply to a specific inquiry, the appellant identified the crack-laden green jacket as belonging to him. Later on, DeAngelis descended into the basement an area to which all occupants of the building enjoyed common access and came across a triple-beam scale of a type commonly associated with the packaging of illegal drugs for retail distribution. Near the end of the search, Corley asked the appellant where he slept. The appellant pointed toward the day bed and said "there." To put the ribbon on the package, Sergeant Stephen Bathgate (the officer in charge of the operation) elicited incriminating comments from the appellant in the course of making the formal arrest. The police transported the appellant to the station house. After again receiving Miranda warnings, the appellant _______ signed a form that signified his understanding of those rights. 3 He then called a friend and asked her to contact his attorney. II. PROCEEDINGS BELOW II. PROCEEDINGS BELOW In due course, a federal grand jury handed up an indictment. The appellant responded in part by filing a motion to suppress the statements he had made to the police during the search. He advanced two arguments. First, he insisted that, while still at Glenham St., he had invoked his right to remain silent and asked if he could contact his attorney, but that the police ignored his importuning and did not permit him to do so. Second, he contended that DeAngelis had dumped the clothing on the floor in a wily effort to provoke him into making an inculpatory comment, and that, therefore, DeAngelis's antics should be treated as an impermissible constructive interrogation. See Rhode Island v. Innis, 446 U.S. 291, 301 (1980). The ___ _____________ _____ government denied that the appellant invoked his right to remain silent or that he sought counsel while at the apartment. It also argued that his initial complaint concerning the handling of his vestments was a spontaneous utterance, and that his subsequent statements amounted to a waiver of his Miranda rights. _______ Following an evidentiary hearing, the district court ruled that DeAngelis's rearrangement of the appellant's wardrobe did not amount to an interrogation, and that the appellant's original objection to DeAngelis's behavior could properly be admitted into evidence as a spontaneous statement. Sweeping more broadly, the court found as a matter of fact that the appellant 4 had neither invoked his rights nor requested an attorney while the search was ongoing. Consequently, the court ruled that, given the adequate warnings which proceeded the officers' questions, the appellant's replies could be used against him. At trial, the appellant did not seriously dispute his possession of crack cocaine, but, rather, concentrated his fire on the issue of distributive intent. Some of the government's proof on this point came in the form of opinion testimony rendered by DeAngelis. In the end, the jury bought the prosecution's wares and convicted the appellant on both counts. The district court sentenced him to serve sixty-three months in prison on the drug trafficking charge, and added a consecutive sixty-month incarcerative term for the firearms count. After a false start, the details of which are not relevant here, this appeal blossomed. III. THE DRUG TRAFFICKING CONVICTION III. THE DRUG TRAFFICKING CONVICTION We begin by analyzing the assignments of error insofar as they relate to the conviction for possession of crack cocaine with intent to distribute. The appellant assigns error in three respects. We treat these claims seriatim. ________ A. Suppression of Statements. A. Suppression of Statements. _________________________ Before us, the appellant assails the district court's refusal to suppress his statements regarding the clothing, the day bed, and the like. His main thesis is that he exercised his prerogative to remain silent and demanded an attorney, but that the police rode roughshod over his rights. He asseverates that, 5 under these circumstances, the interrogation conducted by the officers at the search scene contravened the teachings of both Miranda and Edwards v. Arizona, 451 U.S 477, 484-85 (1981) _______ _______ _______ (explaining that an accused, having voiced a desire to deal with the authorities only with the aid of a lawyer, is not subject to further police interrogation until counsel has been made available to him).1 We find no error. In reviewing orders granting or denying suppression motions, this court scrutinizes a district court's factual findings, including its credibility determinations, for traces of clear error. See United States v. Zapata, 18 F.3d 971, 975 (1st ___ _____________ ______ Cir. 1994). By contrast, we indulge plenary review of the lower court's answers to questions of law, including its ultimate resolution of the constitutional issue. See id. ___ ___ In this case, whether or not to suppress the challenged statements boils down to a credibility call. Such calls are grist for the district court's mill. See, e.g., United States v. ___ ____ _____________ Rutkowski, 877 F.2d 139, 144 (1st Cir. 1989). The district _________ court, having seen and heard the witnesses at first hand, chose to believe the mustered testimony of four law enforcement officers Bathgate, DeAngelis, Panzarella, and Corley (two of whom testified unequivocally that the appellant had neither  ____________________ 1Except for his contention that he invoked certain of his rights prior to questioning, the appellant has not maintained that his responses to police queries represented anything less than a knowing and intelligent waiver of his Miranda rights. Any _______ such argument is, therefore, waived. See United States v. ___ ______________ Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 _______ _____ ______ (1990). 6 expressed a desire to stay silent nor requested counsel) and rejected the appellant's contradictory version of his interaction with the police. If we are to remain faithful to the jurisprudence of clear error, we cannot disturb this finding.2 See id. (acknowledging that a judge's credibility choice between ___ ___ two plausible accounts of the events in question cannot be deemed clearly erroneous); see also Cumpiano v. Banco Santander P.R., ___ ____ ________ _____________________ 902 F.2d 148, 152 (1st Cir. 1990) (explaining that there can be no clear error "unless, on the whole of the record, [the court of appeals] form[s] a strong, unyielding belief that a mistake has been made"). B. Admission of Opinion Testimony. B. Admission of Opinion Testimony. ______________________________ At trial, DeAngelis, after chronicling his experience as a narcotics detective and his encyclopedic familiarity with the mores of the crack cocaine community, testified as to the approximate "street value" (all told, roughly $1,500) of the 148 straws of crack found during the search. He also explained that so large a quantity of crack was consistent with distribution as opposed to personal use. Finally, he listed the visible characteristics of the prototypical crack addict, and noted that  ____________________ 2Since we uphold the lower court's finding that the appellant did not assert his rights, but, rather, voluntarily elected to answer the officers' questions, we need not assess the correctness of the court's holding that the appellant's initial statement comprised a spontaneous utterance, not a response to constructive interrogation. Though the detective's special brand of valet service was heavy-handed (both literally and figuratively), there is no basis on the present record for suppression of the appellant's retort. 7 the appellant manifested none of these symptoms.3 The appellant labors to convince us that this testimony should not have been admitted for two reasons: first, it did not afford the jury appropriate assistance in determining his intent; and second, it comprised an impermissible opinion concerning his supposed mental state. We are not persuaded. 1. Rule 702. Under the Federal Rules of Evidence, 1. Rule 702. ________ expert testimony is admissible if the witness qualifies as an expert and the proffered testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The decision to admit or reject expert testimony is committed to the sound discretion of the trial court and the court's determinations are reviewable only for abuse of that discretion. See United States v. Echeverri, 982 F.2d 675, ___ _____________ _________ 680 (1st Cir. 1993); United States v. Hoffman, 832 F.2d 1299, ______________ _______ 1310 (1st Cir. 1987). Typically, appellate courts give trial judges a wide berth in respect to these kinds of discretionary judgments. See Echeverri, 982 F.2d at 680. ___ _________ Viewed through this lens, the district court's decision to admit DeAngelis's testimony appears to be properly focused. DeAngelis's qualifications as an expert were not challenged either below or in the appellant's brief, and we readily accept  ____________________ 3DeAngelis's testimony assisted the appellant in certain particulars. For example, he admitted on cross-examination that many of the tools of the drug trafficking trade were not found in the apartment, and that no direct evidence (e.g., fingerprints) linked the appellant to the scale that the authorities unearthed in the basement. 8 them as sufficient.4 Turning to the testimony, DeAngelis explained the amount of crack that users normally carry, the effects of an individual dose, and the price of each packet. Matters involving dosages, prices, and other particulars endemic to the ingestion and distribution of crack cocaine are beyond the ken of the average juror. Consequently, expert testimony on these subjects is likely to help the jury and, hence, if sanctioned by the trial judge, is admissible in evidence. See ___ United States v. Ladd, 885 F.2d 954, 959, 964 (1st Cir. 1989) _____________ ____ (approving admission of testimony that the quantity and packaging of certain heroin indicated its suitability for distribution). Other courts, apparently reaching the same conclusion, have regularly upheld the admissibility of such expert testimony based upon the trial judge's belief that it would help the jurors. See ___ United States v. Tapia-Ortiz, 23 F.3d 738, 741 (2d Cir.), cert. _____________ ___________ _____ denied, 115 S. Ct. 206, 286 (1994); United States v. Brown, 7 ______ _____________ _____ F.3d 648, 652 (7th Cir. 1993); United States v. McDonald, 933 _____________ ________ F.2d 1519, 1522 (10th Cir.), cert. denied, 502 U.S. 897 (1991); _____ ______ United States v. Safari, 849 F.2d 891, 895 (4th Cir.), cert. ______________ ______ _____ denied, 488 U.S. 945 (1988). ______ In this instance, the district court heard and overruled the appellant's objections to the proffered testimony.  ____________________ 4To be sure, DeAngelis is not an expert in the sense that he possesses formal education in his field. But as we have recognized before, street savvy and practical experience can qualify a witness as an expert as surely as "a string of academic degrees or multiple memberships in learned societies." Hoffman, _______ 832 F.2d at 1310. 9 On this record, there is no principled way for us to second-guess that ruling. Nor will we strain to do so: we think that DeAngelis's testimony was likely welcomed by the jurors, who otherwise might not have understood the significance of such a large number of crack-filled straws. Seen from this perspective, the testimony provided a factual predicate for the jury, presumably inexperienced in the customs of the crack cocaine community, to draw the inference that the appellant possessed cocaine base for the purpose of retail distribution. 2. Rule 704(b). In a related vein, the appellant, 2. Rule 704(b). ____________ citing Fed. R. Evid. 704(b), suggests that the trial court improvidently allowed DeAngelis to testify to the appellant's state of mind (intent to distribute).5 We reject the suggestion. Rule 704(b) is of fairly recent vintage. It emerged in 1984 as an offshoot of Congress's retooling of the insanity defense. See S. Rep. No. 225, 98th Cong., 2d Sess. 230 (1984), ___ reprinted in 1984 U.S.C.C.A.N. 3182, 3412 (explaining the need to _________ __ limit psychiatric testimony as to the ultimate issue of sanity  ____________________ 5The rule provides: No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether or not the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone. Fed. R. Evid. 704(b). 10 under the law). Congress recommended that the new regime be applied broadly. To this end, the Senate Report stated: [T]he rationale for precluding ultimate opinion psychiatric testimony extends beyond the insanity defense to any ultimate mental state of the defendant that is relevant to the legal conclusion sought to be proven. The Committee has fashioned its Rule 704 provision to reach all such "ultimate" issues, e.g., premeditation in a homicide ____ case, or lack of predisposition in entrapment. Id. at 3413. Thus, both the letter of Rule 704(b) and the spirit ___ that animates it preclude psychiatrists or other mental health professionals from testifying directly to a mental state or condition that constitutes an element of the crime charged (such as a criminal defendant's intent). See United States v. ___ ______________ Childress, 58 F.3d 693, 728 (D.C. Cir. 1995); United States v. _________ _____________ Cameron, 907 F.2d 1051, 1060 (11th Cir. 1990); United States v. _______ ______________ Pohlot, 827 F.2d 889, 906 (3d Cir. 1987), cert. denied, 484 U.S. ______ _____ ______ 1011 (1988). By like token, Rule 704(b) has not been restricted to testimony offered by psychiatrists and other mental health professionals. To the precise contrary, courts have consistently read the rule to apply to cases in which intent is an element of the offense and an expert whether or not a psychiatrist or other mental health professional seeks to testify to the defendant's actual intent. See, e.g., United States v. Buchanan, ___ ____ _____________ ________ ___ F.3d ___, ___ (5th Cir. 1995) [No. 93-8730, slip op. at 8] (discussing narcotics officer's opinions in respect to defendant's specific intent to possess drugs); United States v. _____________ 11 Orr, 68 F.3d 1247, 1252 (10th Cir. 1995) (discussing opinion ___ evidence of witness skilled in banking practices in respect to defendant's intent to commit bank fraud), petition for cert. ________ ___ _____ filed, No. 95-6890 (U.S. Nov. 27, 1995); United States v. Boyd, _____ _____________ ____ 55 F.3d 667, 670 (D.C. Cir. 1995) (discussing police officer's opinions in respect to defendant's intent to distribute cocaine); United States v. Windfelder, 790 F.2d 576, 582 (7th Cir. 1986) ______________ __________ (discussing IRS agent's opinions in respect to defendant's intent to evade taxes). We, too, have indicated, albeit sub silentio, ___ ________ that Rule 704(b) potentially could apply to opinion testimony offered by a person other than a mental health professional. See ___ United States v. Lamattina, 889 F.2d 1191, 1193-94 (1st Cir. ______________ _________ 1989) (discussing FBI agent's testimony in loan-sharking case). Given the unambiguous language of the rule and the weight of authority,6 we hold that Rule 704(b) prohibits all direct expert testimony concerning a criminal defendant's intent, regardless of the witness's field of expertise, so long as intent is an element of the crime charged. This conclusion does not end our inquiry. No matter how expansively Rule 704(b) is read, it is not limitless in its reach. Though Rule 704(b) bars experts from opining on the ultimate issue of a defendant's felonious intent, the rule does  ____________________ 6The Seventh Circuit has expressed a certain reluctance to read Rule 704(b) so generously, but has felt constrained by "the fact that this court and others have routinely assumed that Rule 704(b) imposes an additional limitation, however slight, on the expert testimony of law enforcement officials." United States v. _____________ Lipscomb, 14 F.3d 1236, 1242 (7th Cir. 1994). ________ 12 not prohibit experts from testifying to predicate facts from which a jury might infer such intent. See, e.g., Brown, 7 F.3d ___ ____ _____ at 651 (explaining that Rule 704(b) does "not preclude [] [an expert] from suggesting inferences to be drawn from the facts, including inferences that embrace an ultimate issue"). The case at hand fits neatly within this integument. Here, the witness offered no testimony that directly characterized the appellant's intent to distribute controlled substances. Instead, DeAngelis merely explained that the quantity of crack found at the search site was consistent with distribution, as opposed to personal use. Because this evidence does no more than supply suggested predicate facts, allowing the jury to draw its own conclusions as to intent from those facts if it chooses to credit the testimony, it does not transgress Rule 704(b). See United States v. Lipscomb, 14 F.3d 1236, 1240 (7th ___ ______________ ________ Cir. 1994) (upholding the introduction of opinion testimony suggesting that a particular amount of crack indicated intended distribution, and distinguishing such testimony from testimony that the defendant intended to distribute crack). Discerning no error, we hold that the district court acted within the realm of its discretion in permitting the jury to hear and consider the contested opinion testimony. C. Sufficiency of the Evidence. C. Sufficiency of the Evidence. ___________________________ A convicted defendant who presses a claim of evidentiary insufficiency faces an uphill climb. If the evidence presented, taken in the light most agreeable to the government, 13 is adequate to permit a rational jury to find each essential element of the offense of conviction beyond a reasonable doubt, then the defendant's claim fails. See United States v. Olbres, ___ _____________ ______ 61 F.3d 967, 970 (1st Cir. 1995); United States v. Gifford, 17 ______________ _______ F.3d 462, 467 (1st Cir. 1994). Phrased another way, as long as the aggregate evidence justifies a judgment of conviction, "it need not rule out other hypotheses more congenial to a finding of innocence." Gifford, 17 F.3d at 467. _______ When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the government's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. See United States v. Taylor, 54 F.3d 967, 974 ___ _____________ ______ (1st Cir. 1995); United States v. O'Brien, 14 F.3d 703, 706 (1st _____________ _______ Cir. 1994). In other words, "the trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and, moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt." Olbres, 61 F.3d at 970. Because the district court's ______ disposition of a motion for judgment of acquittal is subject to de novo review, see id., this court, like the trial court, must __ ____ ___ ___ "scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt." Taylor, 54 F.3d at 974. ______ 14 Applying these straightforward rules to this record makes short shrift of the appellant's claim. The elements of the offense of conviction are knowing possession of a controlled substance (here, crack) and intent to distribute that substance. See United States v. Marin, 7 F.3d 679, 688 (7th Cir. 1993), ___ ______________ _____ cert. denied, 114 S. Ct. 739 (1994). Here, these elements were _____ ______ amply proven. The discovery of sizable quantities of crack at the appellant's place of abode and in his jacket, together with the appellant's admissions to the authorities, form a sturdy platform on which to load a finding of guilt. The opinion evidence that we have recounted furnishes additional support for the finding. It is clear to us that a rational jury, impartially assaying all the evidence, could have found beyond a reasonable doubt as this jury did that the prosecution had successfully proved the essential elements of the drug trafficking charge.7 IV. THE FIREARMS CONVICTION IV. THE FIREARMS CONVICTION The jury also convicted the appellant on a charge of violating 18 U.S.C. 924(c)(1).8 The appellant challenges this  ____________________ 7The appellant places great reliance on the decision in United States v. Boissoneault, 926 F.2d 230 (2d Cir. 1991). But _____________ ____________ Boissoneault does not assist his cause. Here, unlike in ____________ Boissoneault, there is sufficient corroborative evidence  ____________ including but not limited to the admissions, the firearms, and the sheer quantity of drugs to reinforce the opinion testimony and support a guilty verdict. 8The statute of conviction provides in pertinent part: Whoever, during and in relation to any . . . drug trafficking crime . . . for which he may be prosecuted in a court of the United 15 conviction, asserting that the evidence is insufficient to sustain the verdict. While this case was pending on appeal, the Supreme Court decided Bailey v. United States, 64 U.S.L.W. 4039 (1995). ______ ______________ The Bailey Court concluded that, in order to convict an accused ______ for "use" of a firearm under section 924(c)(1), "the Government must show active employment of the firearm." Id. at 4041. Thus, ___ "liability attaches only to cases of actual use" of a firearm, id. at 4042, a standard that "includes brandishing, displaying, ___ bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Id. ___ This construction of the "use" prong of section 924(c)(1) resolved a split in the circuits, see id. at 4040-41 ___ ___ (citing representative cases), and, in the bargain, abrogated earlier decisions of this court that permitted conviction under a more inclusive definition of "use." See, e.g., United States v. ___ ____ _____________ McFadden, 13 F.3d 463, 465 (1st Cir. 1994) (holding that evidence ________ of the presence of a gun under a mattress, with cash, near drugs, sufficed to show "use"). Consequently, we acknowledge that McFadden and its siblings are no longer good law. ________ Bailey is directly on point here. At oral argument, ______ the government confessed error, candidly admitting that its evidence was insufficient to show "use" under the Bailey ______  ____________________ States, uses or carries a firearm, shall . . . be [subjected to additional punishment]. 18 U.S.C. 924(c)(1) (1988 & Supp. II 1990). 16 standard. Because our assessment of the record conduces to the same conclusion, we reverse the appellant's conviction under 18 U.S.C. 924(c) and direct the district court to enter judgment in Valle's favor on that count.9 V. CONCLUSION V. CONCLUSION To recapitulate, we affirm the appellant's conviction on the drug trafficking charge and reverse his conviction on the firearms charge. Since it is conceivable that our disposition of the latter count might affect the sentencing calculus in regard to the former count, we honor counsels' joint request and remand to the district court for possible reconsideration of the sentence originally imposed on the drug trafficking count. See ___ generally United States v. Pimienta-Redondo, 874 F.2d 9, 14 (1st _________ _____________ ________________ Cir.) (en banc) (discussing, in a pre-Guidelines case, the district court's "authority to reshape a sentence when multiple convictions garner mixed reviews on appeal some affirmed, some reversed"), cert. denied, 493 U.S. 890 (1989). _____ ______ We need go no further. We intimate no view as to whether the district court should undertake to reconsider the sentence previously imposed or, if it chooses to do so, what the appropriate outcome of such reconsideration might be. Affirmed in part, reversed in part, and remanded. Affirmed in part, reversed in part, and remanded. ________________________________________________  ____________________ 9Although the Bailey Court did not address the "carry" prong ______ of 18 U.S.C. 924(c)(1), the government concedes that, in this case, it has no evidence that the appellant carried firearms during and in relation to the commission of a drug trafficking offense. 17