USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1328 UNITED STATES, Appellee, v. RAMBERTO HERNANDEZ, AKA RAM, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jos Antonio Fust , U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and DiClerico,* District Judge. ______________ _____________________ H. Manuel Hern ndez, by Appointment of the Court, for _____________________ appellant. Jos A. Quiles-Espinosa, Senior Litigation Counsel, with ________________________ whom Guillermo Gil, United States Attorney, and Nelson P rez- _____________ _____________ Sosa, Assistant United States Attorney, were on brief for ____ appellee. ____________________ March 17, 1997 ____________________  ____________________ * Of the District of New Hampshire, sitting by designation. TORRUELLA, Chief Judge. Defendant-appellant Ramberto TORRUELLA, Chief Judge. ___________ Hern ndez was convicted of (1) conspiring with five other co- defendants to possess with the intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. 846; and (2) along with three other co-defendants, aiding and abetting each other in knowingly and intentionally distributing twenty- nine kilograms of cocaine in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. 2. Hern ndez appeals, challenging the sufficiency of the evidence and claiming that his Sixth Amendment rights to confrontation and to a fair trial were denied because the government was permitted to convict him based on the uncorroborated testimony of a single unindicted alleged coconspirator, William Negr n-Zapata ("Negr n-Zapata"), who was awaiting sentencing in another case. We affirm. At trial Negr n-Zapata testified as follows. He received a call from Willie Maya-Acosta ("Maya-Acosta"), inquiring whether Negr n-Zapata knew of any kilograms of cocaine available for purchase. Negr n-Zapata, in turn, contacted Jos  Luis V lez-Carrero ("V lez-Carrero"). On October 27, 1991, Maya- Acosta delivered $290,000 to Negr n-Zapata. Later that day, V lez-Carrero and Negr n-Zapata went to a fish market owned by appellant Hern ndez and delivered $261,000 to Hern ndez.1 Hern ndez gave them twenty-nine kilograms of cocaine. Hern ndez was acting as an intermediary in exchange for a commission.  ____________________ 1 Of the original $290,000, $29,000 was divided between Negr n- Zapata and V lez-Carrero as a commission. -2- I. Sufficiency of the Evidence I. Sufficiency of the Evidence Hern ndez' first claim challenges the sufficiency of the evidence. In reviewing such claims, we view the evidence in the light most favorable to the prosecution and ask whether any rational factfinder could have found guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United ___ _______ ________ ______ States v. Valle, 72 F.3d 210, 216 (1st Cir. 1995). ______ _____ It is well established that an accomplice is qualified to testify as long as any agreements he has made with the government are presented to the jury and the "judge gave complete and correct instructions detailing the special care the jury should take in assessing the testimony." United States v. Ortiz- _____________ ______ Arrigoit a, 996 F.2d 436, 438-39 (1st Cir. 1993). Indeed, a __________ conviction based solely upon the uncorroborated testimony of an accomplice can be upheld, as long as the jury is properly instructed and the testimony is not incredible as a matter of law. See United States v. And jar, 49 F.3d 16, 21 (1st Cir. ___ _____________ _______ 1995). As always, the credibility of a witness is a matter for the jury. See Ortiz-Arrigoit a, 996 F.2d at 439. ___ ________________ The government's case relied on the testimony of its only witness, Negr n-Zapata. Negr n-Zapata testified that he was a long-time drug dealer, had already been convicted twice for drug trafficking, had one sentence reduced from sixty months to twenty-four months because of his willingness to testify for the government, and was still awaiting sentencing in a drug case in which he had been convicted over two and a half years prior to -3- his testimony in the instant case. Negr n-Zapata cooperated with the prosecution in exchange for more lenient treatment and certification of his cooperation to a judge who was to sentence him after the Hern ndez trial. He was eventually given time served in the case for which his sentence was pending. Although these circumstances raise questions of credibility regarding Negr n-Zapata's testimony, this court does not engage in a plenary review of the credibility of witnesses. A rational juror could have believed Negr n-Zapata's version of events. Negr n-Zapata testified in considerable detail regarding the crime and Hern ndez' role in it. Viewing the testimony in the light most favorable to the verdict, the jury could have concluded that the testimony established that Hern ndez joined in the conspiracy, and possessed and distributed cocaine. Negr n- Zapata was cross-examined in detail regarding both his testimony and his credibility. Finally, appellant fails to demonstrate that there existed overwhelming evidence to contradict Negr n's testimony. For all of these reasons, we deny the sufficiency of the evidence claim. II. The Confrontation Clause II. The Confrontation Clause Hern ndez claims that his Sixth Amendment right to cross-examine Negr n-Zapata was denied. The Sixth Amendment states that "[i]n all criminal proceedings, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment guarantees the accused the right to cross-examine government witnesses fully and -4- fairly. See Delaware v. Van Arsdale, 475 U.S. 673, 678-79 ___ ________ ____________ (1985); United States v. Rivera-Santiago, 872 F.2d 1073, 1084 _____________ _______________ (1st Cir. 1989).  It is well established that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not ___________ cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, ________ _________ 474 U.S. 15, 20 (1985). "[T]he Confrontation Clause is generally satisfied when the defense is given full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Id. at 22. ___ Furthermore, once the defendant is given the opportunity to cross-examine government witnesses, the extent of cross- examination is within the sound discretion of the trial court and we review only for abuse of discretion. See Rivera-Santiago, 872 ___ _______________ F.2d at 1085. In the instant case, there can be no question that Hern ndez was permitted a full and fair opportunity to cross- examine the witness. Indeed, the defendant fails to identify any ___ circumscription imposed on his cross-examination of Negr n- Zapata, much less a restriction that would rise to the level of an abuse of discretion.2 The defense argues that "[t]he jury was  ____________________ 2 We add that defense counsel did not raise the confrontation issue at trial. Arguments raised for the first time on appeal are forfeited and reversible only upon a demonstration of "plain error." United States v. Sullivan, 98 F.3d 686, 687 (1st Cir. _____________ ________ 1996). "The plain error doctrine of Federal Rule of Criminal -5- allowed to hear Negr n-Zapata's testimony unaware that he would be rewarded with a sentence of time served because of, among other things, his testimony in this case. As a result, defense counsel were denied a 'full and fair' opportunity to impeach Negr n-Zapata by showing his motivation to please the government." Appellant's Brief at 11. In fact, the defense was afforded the opportunity to cross-examine Negr n-Zapata on every aspect of his cooperation agreement with the government. On cross-examination, Negr n- Zapata admitted that he had been awaiting sentence for twenty- nine months and that he had a cooperation agreement with the government. He testified that, in exchange for his cooperation, the government would recommend a reduced sentence in the case in which he was awaiting sentencing. In addition, the district court judge read portions of the Sentencing Guidelines to the jury to make it clear that Negr n-Zapata's sentence could be reduced below the minimum mandatory sentence in exchange for his cooperation. Hern ndez argues that the defense could have impeached Negr n-Zapata's testimony more successfully if it had known that he would be credited for time served and released. Whether true  ____________________ Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement. The Rule authorizes the Courts of Appeals to correct only 'particularly egregious errors,' those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" United ______ States v. Young, 470 U.S. 1, 15 (1985) (citations omitted). Even ______ _____ if we were to conclude that there had been a violation of Hern ndez' right to cross-examination, appellant would have to demonstrate plain error in order to win a reversal. -6- or not, this contention does not lead to the conclusion that the right to cross-examine was compromised. At the time of the testimony, Negr n-Zapata had no assurance that he would be credited for time served and released. He only knew, as he testified, that his cooperation would be certified to the sentencing judge. In other words, the defense was permitted to present to the jury the conditions under which Negr n-Zapata was testifying. The jury was fully informed and able to assess Negr n-Zapata's credibility. We conclude, therefore, that the defense was granted a full and fair opportunity to cross-examine Negr n-Zapata. Finally, we note that appellant's appeal to Rule 32(a) of the Federal Rules of Criminal Procedure,3 the Local Rules for the District of Puerto Rico, and Sixth Amendment guarantees regarding speedy sentencing belong to the defendant awaiting sentencing, in this case Negr n-Zapata. Violation of these rules does not give Hern ndez grounds for a reversal of his conviction. III. Jury Instructions III. Jury Instructions Finally, Hern ndez objects to the jury instructions. The relevant portion of the instructions is as follows: You have also heard testimony regarding the Government's witness' reputation in the community for truthfulness or untruthfulness. In deciding this case, you should consider that evidence together with and in the same manner as all the other evidence in the case.  ____________________ 3 Federal Rule of Criminal Procedure 32(a) requires that sentencing should take place without "undue delay." -7- You have also heard testimony from an unindicted co-conspirator who has a cooperation agreement with the Government. That testimony was given in exchange for a promise by the Government that the witness will not be prosecuted for some crimes he has admittedly committed, including the ones in this case. The Government will also certify his cooperation to another judge who will sentence him in another case in the future. In evaluating this testimony, you should consider whether that testimony may have been influenced by the Government's promise and you should consider that testimony with greater caution than that of an ordinary witness. Such agreements are legal. The only -- the law only requires that you consider testimony given under those circumstances with greater caution than that of an ordinary witness. Trial Transcript, vol. VI, at 896. The entirety of appellant's argument with respect to the jury instructions is to quote the last two paragraphs of the above excerpt and to state that "the trial judge, in giving the legally required instruction to the jury on the care with which it must consider the testimony of an accomplice, minimized the importance of the charge by adding the word 'only.'" Appellant's Brief at 11. Because appellant failed to object to the jury instructions at trial, we review only for plain error. See ___ Sullivan, 98 F.3d at 687. "Our principal focus in reviewing jury ________ instructions is to determine whether they tended to confuse or mislead the jury on the controlling issues." See Service ___ _______ Merchandise Co. v. Boyd Corp., 722 F.2d 945, 950 (1st Cir. 1983). _______________ __________ -8- We do not believe that the instructions provided by the trial judge confused or misled the jury. The judge accurately summed up the conditions under which Negr n-Zapata testified and added that jurors should "consider whether the testimony may have been influenced by the government's promise and you should consider the testimony with greater caution than that of an ordinary witness." Tr. IV, at 896. Because the jury was informed that Negr n-Zapata's testimony should be viewed with caution, we do not believe there was error in the instructions and certainly not "plain error."4 Although appellant's claims cannot justify a reversal in this case, we add that we find troubling certain practices brought to light in this case. In particular, we are concerned with the practice of incarcerating an individual for an extended period of time without sentencing, while holding out a promise that his or her cooperation will lead to a more lenient sentence. At least two aspects of this practice are problematic. First, although the government's offer may be attractive to an individual defendant, we do not believe that the right to prompt sentencing exists merely as a bargaining chip for defendants. It is inappropriate to hold a defendant in prison for long periods of time pending sentencing, in this case two and a half years, while the government tries to extract information from him.  ____________________ 4 We add that Hern ndez not only fails to point to error in the instructions, but concedes that they were "perhaps technically correct." Appellant's Brief at 12. -9- The second problem is that this practice increases the likelihood that innocent individuals will be implicated by defendants trying to placate the government. This is obviously a concern whenever a defendant cooperates with the government in exchange for lenience, but we feel that as the period of incarceration increases unduly, the risk of false statements intended to appease the defendant's captors becomes too great. Although this is not the case for corrective action by this court, suffice it to say that we caution the government against abuse of this practice and that we will view with suspicion its continued use. Nothing in this opinion should be taken to support such conduct. IV. Conclusion IV. Conclusion For the reasons stated herein, appellant's conviction is affirmed. affirmed ________ -10-