USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals For the First Circuit ____________________ No. 96-1661 UNITED STATES, Appellee, v. JUAN R. CASTILLO-DE LOS SANTOS, Defendant - Appellant. ____________________ No. 97-1277 UNITED STATES, Appellee, v. MARCOS COPLIN-BRATINI, Defendant - Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Daniel R. Dom nguez, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ John R. Gibson,* Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ _____________________ Edgardo Rodr guez-Quilichini, Assistant Federal Public _____________________________ Defender, with whom Lucien B. Campbell, Acting Federal Public ___________________  ____________________ * Of the Eighth Circuit, sitting by designation. Defender, and Miguel A.A. Nogueras-Castro, Assistant Federal ____________________________ Public Defender, were on brief for appellant Castillo-de los Santos. Carlos P rez-Olivo, by appointment of the Court, for ___________________ appellant Coplin-Bratini. Jacabed Rodr guez-Coss, Assistant United States Attorney, _______________________ with whom Guillermo Gil, United States Attorney, and Jorge E. _____________ ________ Vega-Pacheco, Assistant United States Attorney, Chief, Criminal ____________ Division, were on brief for appellee. ____________________ December 16, 1997 ____________________ -2- JOHN R. GIBSON, Senior Circuit Judge. Juan R. JOHN R. GIBSON, Senior Circuit Judge. ________________________ Castillo-de los Santos and Marcos Coplin-Bratini appeal their convictions for importing 24.5 kilograms of cocaine discovered inside a ballast tank in their vessel, the Miss Gina. They were _________ convicted on three counts: possessing cocaine with intent to distribute, 21 U.S.C. 841(a)(1)(1994) and 18 U.S.C. 2 (1994); importing cocaine, 21 U.S.C. 952(a)(1994) and 18 U.S.C. 2; and possessing cocaine on board a vessel arriving in the United States without the cocaine having been part of the cargo entered in the manifest or part of the official supplies of the vessel, 21 U.S.C. 955 (1994) and 18 U.S.C. 2. Each argues that there was insufficient evidence to convict him, and Castillo-de los Santos argues that the court erred in admitting evidence that he failed to file income tax returns. We affirm the convictions. The Miss Gina arrived in Puerto Rico with no cargo on _________ September 11, 1995, after departing from the Dominican Republic. The Miss Gina was a small, old commercial vessel owned by the two _________ appellants.1 Castillo-de los Santos identified himself as the captain of the vessel. The United States Customs Service conducted an initial search of the vessel, and during the search a trained dog alerted to a black bag belonging to Castillo-de los Santos. The dog's reaction indicated that the bag had once contained narcotics, but at the time of the customs search, the  ____________________ 1 Originally a third partner had owned a part interest in the vessel; he relinquished ownership before the events at issue here.  -3- bag was full of anabolic steroids. The search revealed more steroids, which the Customs Service seized.  The Customs Inspector left the ship, but returned and informed Castillo-de los Santos that he had to wait for a Customs Agent to arrive. By this time, Castillo-de los Santos was preparing to pull the vessel out of the dock. He became agitated and had to be ordered repeatedly to turn off his engines. Coplin- Bratini was also on board the vessel. He also became agitated and said that he had to leave the vessel because he had ulcers. The Customs Agent arrived and arrested Castillo-de los Santos for possession and importation of steroids.  On September 14, 1995, the Customs officials returned and searched the vessel again. This time the inspectors searched the cargo hold. They noticed that some of the metal hatches of the water tanks in the hold had been painted so recently that the paint was not yet dry. Also, the nuts and bolts of the hatch were loose. In contrast, another hatch in the same area was not painted, and the nuts were rusty, showing that they had never been removed. The inspectors looked inside one of the tanks with the newly painted hatch and found two metal boxes floating in a diesel oil layer above the water inside the tank.2 The boxes contained 24.75 kilograms of cocaine. At trial the government showed that the Miss Gina had _________ only conducted seven trips during the two years that the  ____________________ 2 The government argued in closing that the layer of diesel oil was meant to mask the smell of the drugs, so that the drugs would not be detected by drug-sniffing dogs. -4- appellants owned it, and that on each trip the vessel carried cargo to the Dominican Republic, but returned to Puerto Rico empty. The vessel's marine agent testified that it was common for commercial vessels to carry cargo from the Dominican Republic to "the islands"; after delivering their cargo to the islands, such vessels would arrive at Puerto Rico empty, ready to pick up a new cargo. However, the Miss Gina had not carried any cargo __________ from the Dominican Republic.  Castillo-de los Santos, Coplin-Bratini, and their partner had bought the vessel for $45,000. The government introduced testimony and financial records of the ship's agent, which it summarized as showing that during the two years of the appellants' ownership, the Miss Gina had expenses exceeding __________ $75,000, but grossed less than $35,000. The ship's marine agent testified that during those two years, the ship had accumulated more than $25,000 in bills to the agent, and that the bills had been paid in cash on every occasion but one, in denominations of twenties, tens, fives, and ones. The government also introduced Coplin-Bratini's last five tax returns, which apparently showed an average income of $15,000. Castillo-de los Santos had not filed any tax returns with the Puerto Rico Treasury Department.  The wholesale value of the cocaine seized from the Miss ____ Gina was $15,500 per kilogram, or a total of $379,750. The value ____ of the cocaine once cut and prepared for retail distribution would have been $4.9 million. -5- Coplin-Bratini testified. On cross-examination, the government showed that he spent more money than he reported as income in his income tax returns and that he had assets out of proportion to his reported income level. Castillo-de los Santos also testified. He admitted that, before the trip, he checked the water tanks to see that they were working. He said he did not know who painted the hatches and suggested that they were not painted when he left the Dominican Republic, but perhaps were painted by the sailors without his knowledge during the twenty-four hour voyage from the Dominican Republic to Puerto Rico.  The jury found both men guilty. They were both sentenced to 188 months imprisonment on each count, to be served concurrently, five years supervised release, and a $50 monetary assessment on each count. I. Both appellants contend that there was insufficient evidence to convict them, specifically, that the government did not prove they knew of the cocaine's presence on the vessel. We must uphold the convictions if the evidence, taken in the light most favorable to the government, is adequate to permit a rational jury to find each essential element of the offenses beyond a reasonable doubt. See United States v. Valle, ___ _____________ _____ 72 F.3d 210, 216 (1st Cir. 1995). All credibility determinations must be resolved in the prosecution's favor, and among competing inferences, we must draw the inference that best fits the -6- prosecution's theory of guilt. Id. at 216-17. The evidence of ___ knowledge in this case is circumstantial. However, [I]n the context of review of a motion for acquittal, no legal distinction exists between circumstantial and direct evidence. Furthermore, it is unquestioned that direct evidence need not be presented. Judicial authority teaches that the government can use circumstantial evidence as long as the evidence, viewed as a whole, is sufficient to warrant a reasonable jury to conclude that the defendant is guilty beyond a reasonable doubt. United States v. Doe, 921 F.2d 340, 343-44 (1st Cir. 1990) ______________ ___ (internal quotations and citations omitted). The circumstantial evidence that Castillo-de los Santos and Coplin-Bratini knew that the cocaine was in the water tank is not overwhelming. Cf. United States v. Piedrahita-Santiago, 931 ___ _____________ ___________________ F.2d 127, 130-31 (1st Cir. 1991) (large cargo of marijuana on small boat, vessel in poor repair and responded evasively to attempts to contact it); United States v. Passos-Paternina, 918 _____________ ________________ F.2d 979, 984-86 (1st Cir. 1990) (bizarre behavior of vessel in storm, avoiding Coast Guard, evidence that crew had just removed plates behind which drugs hidden, no valid registration, etc.), cert. denied, 499 U.S. 982 (1991); United States v. Corpus, 882 ____________ _____________ ______ F.2d 546, 549-50 (1st Cir.) (as Coast Guard sought to board tugboat, bales of marijuana suddenly appeared in the water, tugboat lacked sufficient equipment on board to tow, etc.), cert. _____ denied, 493 U.S. 958 (1989). However, giving the prosecution the ______ benefit of all reasonable inferences, we conclude that the evidence is sufficient. -7- First, Castillo-de los Santos and Coplin-Bratini were the owners of the vessel and were on board the vessel when it arrived in Puerto Rico, with eight men on board. Castillo-de los Santos was the captain. The hatches to the tanks in which the cocaine was hidden had been recently painted, so that the paint was still sticky. Castillo-de los Santos admitted he had checked the water tanks before leaving. Coplin-Bratini also said that he had been down in the cargo hold the day before the ship left the Dominican Republic. The senior special agent of the Customs Service stated that in his experience investigating smuggling cases, given such a large load of cocaine, somebody with control over the ship would have to have knowledge that it was on board. The captain would have control of the ship, and in this case the captain and also the co-owner of the vessel were on board. The vessel left the Dominican Republic empty, which supports an inference that there was no commercial reason for the trip and therefore the captain and owner must have known of an illicit purpose. See Corpus, 882 F.2d at 550. Moreover, the drug- ___ ______ sniffing dog alerted to a bag claimed by Castillo-de los Santos, indicating that the bag had earlier contained narcotics. The value of the cocaine on board, about $400,000 wholesale or $4.9 million retail, supports an inference of knowledge, since we have before observed that it is unlikely the owner of a valuable cargo would stow it in a vessel without the knowledge of the vessel's captain. See Passos-Paternina, 918 ___ ________________ F.2d at 985. The partnership relation between Castillo-de los -8- Santos and Coplin-Bratini supports an inference that they shared knowledge about the use being made of their jointly owned vessel. See United States v. Guerrero, 114 F.3d 332, 342 (1st Cir. 1997), ___ _____________ ________ cert. denied, 118 S. Ct. 320 (1997); Corpus, 882 F.2d at 550 _____________ ______ (knowledge established by circumstantial indicia, including close relationship of crew); United States v. Guerrero-Guerrero, 776 _____________ _________________ F.2d 1071, 1077 (1st Cir. 1985), cert. denied, 475 U.S. 1029 _____________ (1986). Finally, the financial evidence that the vessel had been operated at a loss since the appellants had owned it could support the inference that they had intended to use the vessel for smuggling. They paid substantial expenses to their marine agent in cash -- not only in cash, but in very small denominations. The government's expert on drug smuggling stated that drug transactions were usually conducted in cash, specifically in small denominations. See United States v. Ariza- ___ _____________ ______ Ibarra, 605 F.2d 1216, 1225 (1st Cir. 1979). There was evidence ______ that Coplin-Bratini's living expenses exceeded the amount of income he reported in his income tax returns and that his assets were greater than what his reported income would warrant. The financial evidence supports an inference that he had a practice of supplementing his legal income with illegal income. These facts, taken together, would permit a jury to find the essential element of knowledge of the cocaine. We must uphold the jury's verdict.  -9- II. Castillo-de los Santos argues that the court erred in admitting evidence that he had not filed tax returns for five years. The purpose of this evidence, as in United States v. ______________ Figueroa, 976 F.2d 1446, 1454 (1st Cir. 1992), cert. denied, 507 ________ ____________ U.S. 943 (1993), was to show that he had greater income than he was reporting to the government, and to suggest that his income was therefore derived from an illegal source that he dared not report. Castillo-de los Santos argues that the government did not show that he was obliged to report the income, because he had lived in the Dominican Republic since 1989 and had no such obligation. He did not make this argument before the evidence was admitted. His counsel objected to the use of the income tax information, but he did not suggest to the court that Castillo-de los Santos was not required to file a return. His counsel said only, "[H]e's a very humble man who, like many people in our country, for whatever reason, he did not file income tax." Not until after the evidence had been admitted did Castillo-de los Santos's lawyer attempt to establish on cross-examination that Castillo-de los Santos did not live in Puerto Rico. Even then, the agent being cross-examined steadfastly repeated that Castillo-de los Santos had said he lived in Puerto Rico. At the time the evidence was admitted, Castillo-de los Santos did not inform the court of the factual predicate of his present argument. We cannot require the district court to be -10- clairvoyant. Because Castillo-de los Santos did not preserve the objection he now urges, we review only for plain error. See ___ Figueroa, 976 F.2d at 1453. There is no plain error here.  ________ Castillo-de los Santos also contends that the evidence suggested to the jury that he was guilty of another crime -- tax evasion. He preserved this objection, so we review the admission of the evidence for abuse of discretion. See id. at 1454. The ___ ___ court in this case instructed the jury that the appellants were not charged with income tax violations and that the jury was not to consider the evidence as showing "a potential problem with his local tax returns." See id. (cautionary instruction minimized ___ __ danger of prejudice). This instruction adequately channeled the jury's use of the evidence and forestalled any prejudice. There was no abuse of discretion.  We affirm the convictions. ______ -11-